Company et al. And we'll begin with Mr. Chong. Good morning, Your Honors. I'm Edward Chong. I'm serving as counsel on behalf of the appellants. This matter that's before the court involves a 1933 concession agreement. And I think one of the important factors to consider before even getting started on any analysis in relation to a concession agreement is to specifically understand what a concession agreement actually is. And in this particular case, a concession agreement is the right for a party to come onto some land to use and occupy that land. Now this particular 1933 concession agreement is historical. It's well known and there's no debate as to whether it's legitimate or not. The interesting thing about this is that at the time that this 1933 concession agreement was signed, there was no oil that was found. The 1933 concession agreement specifically itself related to the use and occupation of the land and rents to be paid for the use and occupation of that land. There are three particular sections that are contained in that concession agreement that are what allowed a arbitral panel in Egypt to award. Okay, what led y'all to Egypt? How did that fit into this case? Well, specifically, Your Honor, it's contained in the 1933 concession agreement, Article 31, which contains the agreement to arbitrate. At the time, the parties filed a claim with the Al-Khobar Court against Saudi Aramco in relation to the land, and they specifically asked the court for compensation for that land. That court was taken out. The commission, the legal committee, the commission that they make reference to, took the litigation out of the court's hands and made an independent decision on its own without any litigation. I'm not asking, like, what is the lawsuit about? I'm asking why Egypt was selected rather than the Netherlands or any other country. Well, primarily because it was an Arabic-speaking country, and the concession agreement that was brought before the arbitral panel was written in Arabic as well as also in English, as you well know. Yes, in the Netherlands, most everyone speaks English. Yes, yes, I understand that. But in this particular case, the appellants in this case started arbitration in Egypt, and they specifically wrote to Saudi Aramco addressing that the arbitration proceedings were to commence in Egypt. Saudi Aramco, as evidenced in Chapter 11 of the appellant's records, yes, indicate that they never objected to— They objected to the arbitration altogether, but they never agreed to a location different than the Netherlands. Well, no, their objection was very specific, Your Honor. Their objection was that no agreement to arbitrate exists, which is the primary issue in this case, because there's no dispute that Article 31 contained in the 1933 concession agreement actually, in fact, does exist. So that is the only issue that they objected to. If I don't object, that doesn't necessarily mean I agree. So I guess, again, my question is, my understanding was the arbitration—let's assume, arguendo, that they were subject to arbitration in the Hague. Only in—Article 31 says if the parties do not agree as to the venue. Right, and also to where they did agree to Egypt. Well, they didn't object to Egypt. They objected to that there is no arbitration to agreement that actually exists. I mean, you think the failure to object is agreement. Sometimes it is, most of the times. Okay. But let me ask you a more backup question, which is our jurisdiction. So you cite to Rule 83-A-2 about a local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a non-willful failure to comply. Is the failure to confer a question of form or something more? Well, it relates to form, but you have to take a look at Federal Rule Civil Procedure 59, which specifically mandates the time period that a party has to be able to file a motion for reconsideration. So we filed that, and the cases that the Saudi Aramco has put forward are cases, first thing, that are unpublished opinions. And in those particular cases, what's distinct is that those individuals ended up filing a notice of appeals, I think, 129 days past the time period. So we actually filed this notice of appeal within 29 days of that period. But if we were to determine that that motion to reconsider never existed because it was stricken, then your notice of appeal would be untimely. Well, the issue that we have with the striking of the motion and the striking of the exhibits for that motion for reconsideration is that federal courts don't have that authority to go ahead and do that. It's contained in Federal Rule Civil Procedure 6 that addresses specifically what is the difference between a pleading and a motion. Here the court went ahead and struck the actual motion itself as well as the exhibits, which we believe that's beyond the authority that's contained in Federal Rule Civil Procedure 12, which is allowing them to be able to strike pleadings, I mean, pleadings themselves. Here we're actually filing a motion that we have a right to be able to file pursuant to Federal Rule 59 and that we have to. It should also be noted the fact that there was a judgment that was entered, a final judgment that was entered. So meeting and conferring at that time period, it's questionable whether that actually is even mandatory because we have a mandatory obligation to go ahead and file the motion for reconsideration and the motion to amend the findings of facts, which addresses the issues of the proposed order because our whole issue with the November 17, 2020 memorandum in court order is that it contains numerous factual errors as well as numerous errors in law, particularly as it relates to the Judge Hanks addressing that the agreement to arbitrate was a violation of public policy. He does an analysis of the agreement to arbitrate and he basically, he does an analysis saying that there is no incorporation by reference and so forth from, that's contained within the 1949 deed. However, the 1949 deed of concession specifically addresses the 1933 concession agreement. But not the arbitration agreement. I'm sorry, Your Honor? But not the arbitration agreement. Yes, not, well, it mentions, it makes reference to other agreements or amendments annexed thereto. And in commercial international arbitration, arbitration agreements themselves are oftentimes considered to be independent from the actual agreement themselves. So, in this particular case, the reference to the concession agreement as well as to other agreements that may be contained in that 1933 concession agreement was sufficient enough for the court to be able to make a determination that there was an incorporation by reference. But more importantly and more concerning is that the court in determining whether there is an incorporation by reference or a valid agreement to arbitrate, does this analysis of Texas state law of whether there's incorporation by reference, whether there's a estoppel and so forth. The court order, by the way, excludes a number of the basis's that we've addressed in our briefing as to why there, that there was the agreement to arbitrate under Texas law is sufficient. But that aside, it does not do any analysis of Article 2 of what is a agreement to arbitrate and what is, how does the court analyze an agreement to arbitrate. The court looks at an agreement to arbitrate to determine under the New York Convention whether there is, it's null, whether it's void, inoperative or incapable of being performed. Well, in this particular circumstance, we know here in this case that this land contains the oil that Saudi Aramco is occupying the land for to today. In fact, if you take a look at their tab 13, which is Record of Appeals 5778 and 5786, their own corporate bylaws identify the concession agreements that they are following from 1933. So the idea that they did not incorporate or did not assume the rights and liabilities of the 1933 concession agreement is just nonsensical. Because it should also be noted, they mentioned that, well, Aramco went ahead and dissolved in 1990, but 1988, the corporate bylaws came into effect. So at that time, in 1988, the corporate bylaws specifically addressed the 1933 concession agreements and how Saudi Aramco would go ahead and be subject to the rights and liabilities of that concession agreement. It should also be addressed the fact that Saudi Aramco failed to assert as a defense Article 5.1.A, which is whether there's a valid agreement to arbitrate to begin with. The very failure of the court to recognize that Saudi Aramco never raised a valid agreement to arbitrate defense doesn't recognize that they waived that defense. In addition, it argues that non-signatories is a basis under Article 5.2.B to establish that it violates public policy. Well, we know that in Arthur Anderson and the GE Power case, as well as just the recent SETI case that we just submitted an FRP 28 letter to, all indicate that non-signatories have rights to be able to engage in arbitration. It's not something new. The contention that this somehow violates public policy doesn't stand with the law, nor does it stand within the law that's over there in Egypt or that's over there in Saudi Arabia. But perhaps the most important point is that Saudi Aramco had a time period to have vacated or annulled the award after the award was issued, and they never did that. They never did that. And we submitted briefings that said that once the award has not been vacated within that time period, it becomes res adjudicata over in the country where the arbitral seat took place. And then we also addressed the Article 3 arguments of the New York Convention, that Takura Construction versus Corporation Raymond, Andy Boyo versus Baker Heights Press Systems, and also the restatement on international commercial arbitration. These cases say that basically if the failure to annul or vacate an award makes that award basically denial proof where you're not able to assert those Article 5 defenses. So the court should not have even considered or engaged in any Article 5 defenses because of that failure to recognize or even address in the order that Saudi Aramco failed to timely vacate the arbitral award. In Article 3 of the New York Convention, it says each contracting state shall recognize arbitral awards as binding and enforce them in accordance with the rules of the procedure of the territory where the award is relied upon. Here we have case law in Texas circuits that say domestically if you do not vacate an award, that award becomes binding. You treat the same foreign award as you would treat a domestic award here. The court also addresses whether the issues are outside the scope to arbitrate under Article 5.1.E. We maintain that the language that's contained in Article 5.1.E. says the award deals with a difference. Yes, whether you, whether it's important at all for us to consider the irregularities that occurred in the Egyptian arbitration proceeding. The irregularities within the arbitration proceeding is a procedural issue and the court does not address it. It says just on its face it looks, you know, quite suspicious. Does that matter? Well, it's suspicious because Saudi Aramco and the Saudi embassy prosecuted them in Egypt and issued an order for the Egyptian prosecutor to prosecute them in an extremely confidential memorandum. The arbitrators were basically prosecuted for finding there was jurisdiction. That would be equivalent to Justice Scalia. Preceding that, preceding the prosecution of them, I mean, was the change of the membership of the arbitration panel. Well, first thing I would, I would. My only question is, is that relevant for us to consider or is that irrelevant? I'm sorry, Your Honor. Is that relevant for us to consider or should we just ignore that? Yes, it is, but the question, the issue is there's, Saudi Aramco never appointed a arbitrator according to that agreement to arbitrate. When you look at the procedure, you have to take a look at the agreement to arbitrate. I'll reserve the rest of my time on your bubble. Thank you, Your Honor. Okay. Ms. Lamb. May it please the Court. Carolyn Lamb with White and Case for Saudi Aramco. We heard a lot about the 1933 concession agreement. Saudi Aramco was not a party to any arbitration agreement with the appellants, to any award, and objected, as you noted in the record on Appeal 5270, at the outset to any proceedings. The district court was correct in determining that there was not. By failing to object to Egypt, have you consented to Egypt? Absolutely not. We weren't a party to an arbitration agreement. Okay, but I guess they're saying even if you construe your letter as an objection to the arbitration, you didn't object to the failure to go to the Netherlands or the use of Egypt, and so have you sort of waived the venue issue, if you will? Absolutely not. If, in fact, there was a legitimate arbitration agreement with Saudi Aramco and with these appellants, then there is still an absence of a specific agreement as to Egypt. You're saying there needs to be an express agreement. There has to be an express agreement. And the only other time, and we've covered it extensively in our briefs, where there was an arbitration and there was a specific agreement, there was actually a supplemental document entered into between the Kingdom and Onassis. That was a wholly separate proceeding. There, they agreed to Switzerland. There, they agreed to international law applicable. They agreed to a multitude of things. But on the face of that arbitration clause, unless you have agreement, you go to The Hague, period. And Dutch law applies. So there's still an International Court of Justice that just called that instead of the prior one? Yes, yes. And we submitted that. We submitted that. And I think you must begin the analysis with the language of Article 31. Article 31 makes clear who the parties are and what the modalities of any arbitration that's being agreed to are. How do you understand their argument to support that they are, that the arbitration agreement is applicable to this dispute? Where are they getting that from your point of view? How do they build their argument? Their argument that the arbitration agreement, that they have a right under the arbitration agreement. In fact, I think the district court dealt with that. How do they have a right under the arbitration agreement from their point of view? From their point of view, they argue that they are a third party beneficiary or otherwise with a right. They admit they're not a signator. They admit that they must find some other mechanism to invoke the agreement to arbitrate in a 33 agreement. And they are not. And we, in fact, presented to the district court two, three sets of legal opinions and factual evidence of the Saudi lawyer, Dr. El-Fahad, of the U.S. lawyer, because of AAOC, the prior corporation, the U.S. corporation that succeeded SoCal in the agreement and its dissolution. And we also submitted an Egyptian lawyer's opinion and a Dutch lawyer's opinion, Professor Vandenberg. All say the same thing. There are no rights under that arbitration clause for any other person. Why? Look at the language of the clause at Article 31. And this can be reviewed de novo by this court. It's solely, as you observe in Breedis, an issue of law as to who would come, a gateway issue as to who would come within this clause. But look at it. It's in the record on appeal, 1130 through 1131. If there is a difficulty, doubt, difference that arises between the government and the company, referring to SoCal. All right. Now, they claim that they are heirs. I mean, their claim is based upon their heirs, who apparently gave up certain rights, correct? Well, their claim, to be clear... Where does their basic claim derive from? Their basic claim arises because they... Where does it derive from? They say, as I understand it, that, in fact, SoCal entered into a deed with their ancestors. All right. And under the terms... Now, let me ask you, did their ancestors have a right to arbitrate under the 33 Agreement? Absolutely not. They were only entering into an agreement under Article 25 of the concession, which was very limited. It was limited to their providing the use of land in exchange for payment. And if you look at the terms... How did the 33 Agreement affect the rights of their ancestors? The 33 Agreement was between the Kingdom of Saudi Arabia, who ultimately owned all the land, and the rights to natural resources under international and Saudi law. And they had to... In fact, they were living on the land. And, as I understand it... We're not arguing the underlying case here to you. Right. As I understand it, when the rights to develop the land were, in fact, conveyed to SoCal, SoCal also obtained the right to enter into certain leases, deeds, sales, whatever they needed to do to develop some of the resources on the land. And they enter into, in 1949, a lease, a deed, under Saudi law, a sale. It's captioned a deed, and it says when you receive payment, you abandon all rights. Look at the terms of that. And... Did their ancestors... What benefits did their ancestors receive either from the 33 or 49 Agreement? They were paid for their deed, and... They were paid. They were paid. And, at that point in time, and until today, there is not any arbitration clause in that deed. While it refers to Article 25 of the Concession Agreement, it does not refer in any way to the arbitration clause, to arbitration with either the Kingdom or SoCal, or AAOC, and Saudi Aramco is nowhere to be found until 1988. There was not any... I bet I have a question for you. Okay. There is not any agreement to arbitrate in the Texas law as well as the federal law. In Breda's, there has to be a clear and unambiguous consent to arbitrate because you're giving up the courts. I'm just looking for the nail that they try to hang their head on. That's all. It's a very elusive thing to find because there isn't any. There is not any agreement to arbitrate that these appellants have. They were Saudi nationals, perhaps other nationals, who say they have land rights, and they made up an arbitration agreement that they didn't have. Okay. So I want to get back to the jurisdictional question about the motion to reconsider being struck and all of that. So the case from the First Circuit in 1994, the airline pilot's case that says, you know, if your motion to reconsider was struck, then your appeal that would have otherwise been timely now isn't. After that, in 1995, there was an amendment to Federal Rule of Civil Procedure 83 to add 83A2, a local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply. And the advisory committee said it was aiming to protect against loss of rights in the enforcement of local rules relating to matters of form. And so I'm wondering, you know, so then all of the subsequent cases that cited to that First Circuit case never talked about 83A2, and neither did you that I saw. So what is your answer to why 83A2 doesn't blow out the argument that the appeal was untimely? Well, first, you review this as a lack of discretion on the part of the court. No, no, I'm not talking about whether the striking was proper or not. I'm saying whether the striking means that the appeal is untimely. Does Rule 83A2 blow that argument out of the water? We don't think so because we don't think that the stricken motion under 59E in fact would have told the time. They could have withdrawn the motion. They could have gone to the court and asked for a prompt decision. They could have filed the notice of appeal which would have divested the court of jurisdiction. But they didn't do any of those things. And they hadn't complied with a record of rules, conference reports, any number of... As I understand it, they didn't attach a proposed order and they didn't have a certificate of conference. And so what I'm saying is those seem like matters of form. Are you arguing that they're something else? And again, what is your answer to the fact that 83A2 is trying to say even if the court could properly refuse to rule on the merits of the motion for reconsideration because of the failure to comply? I'm not getting into that. That's a separate question from whether now the appeal is untimely because of that striking. Right. Well, in our view, the appeal is untimely. And in fact, the record that was before that court was such that it was entirely appropriate to strike the motion. He had complied with none of the local rules that were... Why are they not motions relating to form? In other words, a conference. I don't understand the purpose of a conference on the rule for reconsideration, 59E. I mean, the case is all done with. The case is settled. And there's no apparent need for a conference to serve any particular purpose that would expedite the case or bring the case to the court and compromise without its having to rule on it. Well, I've found that the courts, when they have their local rules, attach great import to both the compliance and the violation. And that is, in fact, what repeatedly in the various cases we cited, the courts have said. Essentially, I mean, as I understand what you've said, is that you have no argument to the contention that those are motions relating to form. Well, they're motions relating... Where's the substance? Where is the substance in those motions that would define it out of Rule 82 Amendment? They are simply the violations of the local rules. Okay. So if we say it's form, it's form. And you're not contesting it, really, as I understand it. Well, you think you win on the appeal even if we get to the sort of merits... I mean, if we find that the appeal is properly before us. This is so fundamentally flawed in all respects that that is an after issue. It is... Well, I mean, it's important because jurisdiction is something... Yes. So I'm not in any way suggesting it's not important. I'm saying if we get past that, you think you still win on... Absolutely. ...the merits of the argument about whether the arbitration agreement was properly followed and enforced against you all. Absolutely. And we should begin looking at the arbitration clause, which we looked at briefly, Article 31, which is 1130 through 31, that applies only to the two parties. Okay. And I think you've made that argument. I don't want to make you repeat it. Do you have any additional arguments? Yes. The... So there's no question on the face of the clause itself, Saude Aramco's not in there. These appellants are not in there. So they have argued, applying numerous theories, that they have a right by incorporation, by reference, by third-party beneficiary, derivative claims, in an attempt to invoke the clause as a third party. The judge looked very carefully at this and applied Texas law, although he did look at Bredis and apply... that applies federal law, by agreement of the parties in Bredis, a Fifth Circuit case. And we argued Saudi law, that there was no explicit agreement, that there is no intent revealed under Saudi law to include them. We argued Dutch law, that there is no clear and unambiguous agreement to arbitrate. And the judge, very correctly, looked to Morrison v. Amway and said, having been no showing that the law of a more appropriate state materially differs from Texas, I'm applying Texas law. And he applied it in a very careful way. He looked at the facts that were before him in the El-Fahad Declaration, in the Coates Declaration, in the El-Shaheed Declaration, and he said, and all of the papers of all kinds filed by the then petitioners, and found there absolutely was a failure, and they bear the burden of proof, to put forward any viable basis. I think his analysis under the New York Convention, with all of the flaws in the proceeding, is similarly correct on the seat of the arbitration, the appointment of the arbitrators. It really is extraordinary when you have the first four arbitrators resign, some of them determine there's no jurisdiction, the last three in a three-day period enter an award in Egypt for $18 billion, which gave themselves $23 million in fees. The entire thing is beyond shocking. It's shocking that someone would come to the court and ask for enforcement. And we submit as well that this court can also affirm dismissal on the basis of the Foreign Sovereign Immunities Act. There's no contest that Saudi Aramco is a foreign sovereign instrumentality under 1603B. And that makes clear they have immunity unless there is an exception. The only even arguable exception is an agreement to arbitrate. They have none that involves Saudi Aramco. It's entirely appropriate under the credit union liquidity versus Greenhill's case in the Fifth Circuit, even in the absence of a cross-appeal, that we can raise this issue, because we're not asking. All right. Thank you. We'll hear the rebuttal. At the outset, your honors, Saudi Aramco has not provided one piece of evidence. You can take your mask off. I'm sorry. Thank you. Saudi Aramco has not provided one piece of evidence related to the ownership. Ownership is provided by deed. And the only deed of ownership that's been provided to the lower court is a deed of ownership of the appellants. They've argued that, in this particular case, that there is no basis for the deed of concession to incorporate the Article 31 language. However, if you just take a look at the deed of concession, it specifically provides that it says, and any additional agreements that may be annexed thereto. It doesn't limit it just to the concession agreement. And this court, Al Rashid... Okay, now finish your argument for me as to how this agreement covers your clause. Minutes. One, two, three, four. Why do you have an arbitration agreement here? Okay, number one, is the agreement itself. You take a look, how do you define an arbitration agreement? In 1933. The 1933 agreement is what you're speaking of now? That's correct. You look at Article 2 of the New York Convention. Article 2 addresses how do you establish that there's an agreement to arbitrate? It's either through letters, it's contained within the agreement itself, or there's a separate agreement that there's an agreement to arbitrate. Okay, next point. Next point is, the deed of concession specifically and unequivocally refers to that 1933 concession agreement. And this court in Al Rashid v. National... How does it refer to it? What does it say in referral to it? It says... It addresses, it says, for the purposes of the Saudi Arabian concession concluded on 4 Safar 1352 corresponding to July 29, 1933 and any additional agreements that may be annexed thereto. So the only other agreements that would be related to that if you take a look at Article 2 on how we define what an agreement to arbitrate is is the concession that is what's contained in Article 31. I don't understand how something that's in the same document is annexed to the document. To me, something that's annexed is something that's added to the document. Like this document, if you then added something in the back, that would be annexed. But the document itself is a document. It basically says any additional agreements that may be annexed thereto. In international commercial arbitration and in relation to the New York Convention... Back to my thing. Your next point. Have you completed your argument about how this arbitration agreement applies to you? It applies to us because this court... We've gone through the first three steps. Is that the end of it? No. There is one other step. It applies to us because this court says that mere reference to an agreement that contains an arbitration clause is sufficient enough to incorporate that arbitration clause. Here, there's mere reference to the 1933 concession agreement that contains an arbitration clause is sufficient enough to establish that there is a standing for our parties. Arguably, even the issue of whether there's contractual standing is a merit issue. In addition to the issues related to... Does that complete your argument? Yes. This agreement applies to your client? Yes, Your Honor. Yes, Your Honor. In addition to that, Your Honor, going back there is no proof of ownership except for our clients. Article 25 of the concession agreement specifically identifies not just SoCal and the Kingdom of Saudi Arabia it identifies private land owners. We are private land owners. Actually, to take that back, Your Honor, let me ask you I'm probably going over this, but to get it clear in my mind, how does the 49 agreement directly affect your client? Because it directly affects our client because Saudi Aramco is still profiting, occupying, and using this land today. And in their corporate bylaws they mention that they're subject to this 1933 concession agreement. Our clients deserve to be compensated according to Article 25. The 49 agreement. What is the 49 agreement? Who is it between? It's between Aramco and our client's ancestors. But the provision provides on behalf of his heirs. Our client's ancestors are a direct party to the 49 agreement. Is that what you're telling me? Yes. And the deed itself, if you take a look at the deed, contains numerous recorded correspondences related to the relationship between the parties. And in 1991 Saudi Aramco even sends a letter after it's dissolved advising them of their duty to honor this 1949 deed agreement. Thank you. We appreciate both sides' arguments and the cases under submission. And at this point in time we're going to take a short break.